Filed 6/23/14  In re Matthew N. CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re MATTHEW N., a Person Coming Under the Juvenile Court Law. | B251698 (Los Angeles County Super. Ct. No. CK75938) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. RAYMOND N., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County. Annabelle Cortez, Judge.  Affirmed.

Cthristopher R. Booth, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, Stephen D. Watson, Deputy County Counsel, for Plaintiff and Respondent.

_____

Appellant contends that the dependency court improperly ordered him to submit to alcohol testing and to participate in a 12-step program. We find that the dependency court's dispositional order best served the interest of appellant's child and thus was not an abuse of discretion. Accordingly, we affirm.

## BACKGROUND

This matter came to the attention of the Department of Children and Family Services (DCFS) on September 28, 2012. Three-year-old Mathew N. had been brought to the emergency room by S.W., Mother, for treatment of blisters resulting from burns on his back, buttocks, and thigh areas. Mother gave inconsistent explanations for Mathew's burns. Finally, after failing a polygraph test, she admitted that she had hit Mathew and placed him in a bathtub with scalding hot water.

Mathew was the subject of a prior dependency proceeding in 2009, when he was born prematurely at 24 weeks and tested positive for cocaine. In that proceeding, the dependency court sustained a count stating that Raymond N., Father, had a history of marijuana use and was a daily user of alcohol, leaving him unable to adequately protect and supervise Mathew. At the conclusion of the prior proceeding, Father was granted monitored visitation with Mathew.

Mother had an extensive DCFS referral history, including for smoking crack cocaine in the presence of her children, and had been diagnosed with schizophrenia and severe depression. Father had a considerable criminal history, including convictions for marijuana possession for sale, narcotics possession for sale, battery, and firearms offenses, and was on probation at the time the instant dependency proceeding was initiated for being a felon in possession of a firearm. Father's probation term was scheduled to end on May 21, 2013. He was an "active father" to Mathew and visited Mathew pursuant to the prior visitation orders.

A Welfare and Institutions Code section 300 petition[1] was filed on October 9, 2012, on behalf of Mathew as well as three half siblings (who are not subject to this

---

[1] All further statutory references are to the Welfare and Institutions Code.

2

appeal).  The petition alleged that Mother physically abused Mathew by repeatedly striking him and placing him in scalding hot water.  At the October 9, 2012 detention hearing, the dependency court detained Mathew in foster care, granted Father monitored visitation, and ordered DCFS to provide Father with low-cost or no-cost weekly substance abuse testing.

Father tested positive for alcohol on October 12, 2012.

A jurisdiction/disposition report was filed on November 27, 2012.  Father told the social worker that he was shocked when he heard that Mother had physically abused Mathew.  He said that, although he knew Mother had been diagnosed with mental health issues, she was a good mother to the children when he was in a relationship with her.  Father acknowledged that he had a criminal past, but he said he was a "changed man," and requested that all four children be placed in his care.  DCFS was not in favor of this arrangement due to Father's criminal history and because he was on probation.  The social worker noted, however, that Father was visiting Mathew on a regular basis, and the visits were going well.

Father's home was evaluated in November 2012 for possible placement of Mathew.  Father lived with relatives in a large home that appeared neat and clean, with running water and electricity.  The social worker reported that Father's interactions with Mathew were "very positive" and he appeared to be a "good father."

The social worker spoke with Father's probation officer, who reported that Father was complying with the terms of his probation.  The probation officer recommended against Mathew being released to Father, though, because Father had an unresolved alcohol problem.  The probation officer said that Father had alcohol on his breath on two separate visits to her office.  The most recent time was on November 8, 2012, when, according to the probation officer, "it smelled like he took a bath in alcohol."  Father told the probation officer that he was going to resolve his alcohol problem in order to gain custody of Mathew.

3

Father tested negative for drugs and alcohol on December 12, December 18, and December 27, 2012, and January 4, 2013. He missed a test on January 14, 2013, claiming that the social worker "did not put the paperwork in on time."

Over DCFS's objection, Mathew was released to Father's custody on January 17, 2013. Father was ordered to abstain from alcohol, to submit to weekly drug and alcohol tests, to enroll in Alcoholics Anonymous (A.A.) with a sponsor, and to take Mathew to all of his appointments. On February 12, 2013, Father reported that he was attending A.A. meetings twice weekly and would have a sponsor once he attended more meetings.

The dependency court sustained the section 300 petition on July 17, 2013, finding that Mother abused Mathew by striking him and placing him in scalding hot water, that she engaged in violent physical altercations with her male companion in 2012 (not Father), and that she had a history of mental and emotional problems. Father was not named in the petition.

At the July 26, 2013 disposition hearing, DCFS continued to object to the release of Mathew to Father. Counsel for DCFS stated that in the prior dependency proceeding, Father had failed to comply with the case plan, which included regular testing. He initially tested positive and then stopped testing altogether. DCFS still had concerns about Father and believed that Father should continue to submit to testing in order to demonstrate sobriety, and continue to participate in a 12-step program. DCFS added that Mathew is a special-needs child. Father's counsel noted that Father had not tested positive for alcohol since October of the prior year, and argued that Father should not be subject to continued testing.

The dependency court declared Mathew a dependent of the court, ordered him removed from Mother, and made a home-of-parent order for Mathew with Father, with family preservation services. Father was ordered to participate in a 12-step program with a sponsor and to submit to on-demand drug and alcohol tests, and to complete a full rehabilitation program if any tests were missed or positive.

Father timely appealed the dispositional order.

4

Father contends on appeal that the order requiring him to submit to drug and alcohol testing was improper. Following the filing of Father's opening brief, this Court took judicial notice of an order from the dependency court dated January 24, 2014, vacating the order that Father test for drugs. Father concedes that the issue of drug testing is now moot, but argues that he should not be required to test for alcohol consumption or participate in a 12-step program.

The dependency court has "broad discretion" in fashioning a dispositional order to best serve and protect the child's interests. (*In re Cole C.* (2009) 174 Cal.App.4th 900, 918; *In re Christopher H.* (1996) 50 Cal.App.4th 1001, 1006 (*Christopher H.*).) As such, we will reverse a dispositional order only if it suffers from a clear abuse of discretion. (*Christopher H.*, at p. 1006.)

Section 362, subdivision (a), vests discretion in the dependency court to "make any and all reasonable orders for the care, supervision, custody, conduct, maintenance, and support" of a dependent child. Father contends, however, that the substance abuse component of the dispositional order violates section 362, subdivision (d), which states: "The program in which a parent or guardian is required to participate shall be designed to eliminate those conditions that led to the court's finding that the child is a person described by Section 300." Father argues that, in this dependency matter, the condition that led to Mathew's becoming a dependent of the court was Mother's abuse and psychological problems, not Father's drinking.

The appellate court in *In re Basilio T.* (1992) 4 Cal.App.4th 155 reversed the portion of a dispositional order requiring the appellant parents to drug test and participate in substance abuse therapy. The court noted the absence of any evidence that the appellants had a substance abuse problem. (*Id.* at p. 172.) It explained, however, that if evidence of a substance abuse problem arose later in the proceedings, the trial court could modify the reunification plan to include a substance abuse component. (*Id.* at p. 173, fn. 9.)

5

In contrast, the appellate court in *Christopher H.* found that a dispositional order requiring drug and alcohol testing was warranted even though the dependency court struck the allegation that the appellant's alcohol problems negatively affected his ability to care for his son. (*Christopher H.*, *supra*, 50 Cal.App.4th 1001, 1004-1006.) The appellate court found the matter distinguishable from *In re Basilio T.* because the record demonstrated that the appellant had a substance abuse problem based on his three arrests for driving under the influence. (*Christopher H.*, at p. 1007.) The problem posed a potential risk of interfering with the appellant's ability to care for his son, and made reunification unlikely unless the problem was managed. (*Ibid.*) Although the dependency court was technically not required to address the appellant's substance abuse, it had discretion to do so, and, given the appellant's history of arrests, it would have been "remiss" to fail to address the problem even though the problem had not yet affected the appellant's ability to care for his son. (*Id.* at p. 1008.)

The reasoning of *Christopher H.* applies equally well here. Father is correct that, in this proceeding, Mathew was not found to be a dependent of the court because of Father's substance abuse issues. But, as in *Christopher H.*, the record contains substantial evidence that Father has substance abuse issues that have the potential to leave him unable to properly care for Mathew. Father's numerous convictions include one for marijuana possession and another for narcotics possession. In the prior DCFS proceeding, the dependency court sustained a count that Father had a history of marijuana use and was a daily user of alcohol, leaving him unable to adequately protect and supervise Mathew. The record reflects that Father tested positive for alcohol in that prior proceeding and then stopped testing entirely. Father also tested positive for alcohol as the instant matter was ongoing, in October 2012, and missed another test in January 2013. And his probation officer reported that Father has an unresolved alcohol problem and went to her office smelling as if he had taken a "bath" in alcohol in November 2012.

As of the time of the July 2013 disposition hearing, Father had no recently missed or failed tests. Father's apparent efforts to overcome his alcohol abuse issues and turn his life around are commendable, and in all respects he appears to be a loving parent to

6

Mathew.  Alcohol testing will facilitate Father's efforts to provide a suitable home for Mathew, who is not only young, but also has special needs.  (See *Christopher H.*, *supra*, 50 Cal.App.4th 1001, 1008.)  The dependency court, therefore, did not abuse its discretion by requiring Father to test for alcohol and to participate in a 12-step program.

## DISPOSITION

The dispositional order, including the alcohol abuse component of Father's case plan, is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


                                        BOREN, P.J.

We concur:


        ASHMANN-GERST, J.


        FERNS, J.*


_____

\*        Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.


7